**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| JOSEPH DEION PAGE,<br><br>Plaintiff,<br><br>v.<br><br>JULIA GREGG and MARY JO LABARGE,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:26-CV-239-CLC-CHS |

## MEMORANDUM & ORDER

Pro se prisoner Plaintiff, Joseph Deion Page, has filed a complaint under 42 U.S.C. § 1983 [Doc. 1] and a motion for leave to proceed *in forma pauperis* [Doc. 2]. For the reasons set forth below, the Court will **GRANT** Plaintiff's motion [Doc. 2] and **DISMISS** the complaint without prejudice for failure to state a claim.

## I. MOTION TO PROCEED *IN FORMA PAUPERIS*

It appears from Plaintiff's motion and accompanying documents [Doc. 2] that he lacks the financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [*id.*] will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia Avenue, Suite 309, Chattanooga, Tennessee 37402 twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk will be **DIRECTED** to send a copy of this Order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure compliance with the requirements for payment of the filing fee.

## II. COMPLAINT SCREENING

### A. Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive a PLRA review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

**B. Allegations of Complaint**

For the past two years, Plaintiff has been housed in the high-security section of the Morgan County Correctional Complex ("MCCX") and confined to his cell for 24 hours per day [Doc. 1 at 8]. Plaintiff cannot visit the law library in person but instead must rely on a request system [*Id.*].

Previously, Plaintiff sought help from the prison law library to bring a legal challenge regarding his allegedly unconstitutional disciplinary proceedings [*Id.*]. Plaintiff asked Defendant Mary Jo Labarge, who oversees the law library, how to challenge the proceedings in court [*Id.*]. Plaintiff was told to file a habeas corpus action and was provided the forms to do it [*Id.*]. Plaintiff's petition was dismissed "because it was not the proper vehicle to challenge the disciplinary hearings"[1] [*Id.*]. Therefore, Plaintiff was given "false information that amounted to fraudulent concealment" despite "begg[ing] for help in preparing for [his] court filings" [*Id.* at 8–9]. Plaintiff has filed over 100 appeals through MCCX's administrative procedure, but he was never given "the information he needed to put a stop to his unconstitutional treatment and conditions" [*Id.* at 11].

While waiting on his habeas ruling, Plaintiff "missed a deadline on [his] most important claims leading to most of them being dismissed" in "Case No. 3:26-cv-38"[2] [*Id.* at 9]. And because Plaintiff was misinformed about the correct manner in which to challenge prison disciplinary proceedings, Plaintiff was unable to get the disciplinary decision overturned [*Id.* at 10]. Those

---

[1] The Court takes judicial notice that the civil action Plaintiff is referencing is *Page v. Phillips*, No. 3:25-cv-884 (M.D. Tenn. June 8, 2026). That action was dismissed for want of exhaustion. *Id.; see also Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 n.6 (E.D. Tenn. 2019) ("Information taken from government websites is self-authenticating under Fed. R. Evid. 902, and courts may accordingly take judicial notice of the information found on these websites." (citations omitted)).

[2] Plaintiff is referring to his civil rights lawsuit in *Page v. Phillips*, No. 3:26-cv-38-TRM-DCP, wherein the District Judge dismissed several of Plaintiff's § 1983 claims as untimely [*See* No. 3:26-cv-38, Doc. 26 at 12–13]. Plaintiff has attached the Court's screening order in that case as an exhibit to the instant complaint [*See* Doc. 1-1 at 32–43].

reports were then used to deny Plaintiff parole [*Id.*]. Plaintiff thus "spent 2 years in conditions that where (sic) [he] could have gotten the courts to intervene and put a stop to" [*Id.*].

Plaintiff has been requesting legal materials for the past two years, and until recently, he typically received what he asked for [*Id.* at 9]. That changed on June 10, 2026, when he submitted a legal request that Defendant Mary Jo Labarge denied because of Plaintiff's indigency [*Id.*].

Defendant Labarge's supervisor is Defendant Julia Gregg, who is in a public relationship with Associate Warden Stacy Oakes, a defendant in Plaintiff's lawsuit in Case No. 3:26-cv-38 [*Id.*]. Mr. Oakes was served with process in that lawsuit on May 5, 2026, and soon thereafter, Plaintiff began having difficulty acquiring legal materials [*Id.* at 9]. Thus, Defendants Gregg and Lebarge conspired to interfere with Plaintiff's exercise of his constitutional rights [*Id.* at 10].

Plaintiff's habeas case was dismissed, his "Aramark lawsuit" was dismissed, and most of his claims against Tennessee Department of Correction ("TDOC") employees were dismissed [*Id.* at 10]. All these dismissals were "due to the lack of help and cooperation" from Defendant Labarge and the law library [*Id.* at 11].

Aggrieved, Plaintiff filed this action against Julia Gregg and Mary Jo Labarge in their respective individual capacities, alleging claims of retaliation, conspiracy, and interference with access to courts [*Id.* at 2, 7]. Plaintiff requests compensatory and punitive damages in an amount "contingent on the outcome of [the] other lawsuits" [*Id.* at 9].

### C. Analysis

#### 1. Retaliation

Plaintiff maintains that he filed the lawsuit in Case No. 3:26-cv-38, Mr. Oakes was served with process in that case on May 5, 2026, Plaintiff was then denied legal material on June 10, 2026, and that this occurred because the law-library supervisor is in a public relationship with a

Mr. Oakes [Doc. 1 at 8, 9]. Therefore, he claims, he has met all the elements to establish a retaliation claim [*Id.* at 9].

To set forth a retaliation claim, Plaintiff must show that: (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

The Court presumes Plaintiff engaged in protected conduct by filing his civil rights lawsuit in Case No. 3:26-cv-38 and thus, has plausibly alleged the first element of a retaliation claim. *See, e.g., id.* at 395–96 (noting plaintiffs utilizing prison regulations in attempt to access the courts were engaged in protected conduct). The Court also presumes Plaintiff suffered an adverse action when he was allegedly denied legal services. *See, e.g., Lewis v. Clark*, 577 F. App'x 786, 799 (10th Cir. 2014) (finding the denial of access to legal services for filing lawsuits could deter a person of ordinary firmness from engaging in that conduct). However, Plaintiff's retaliation claim fails at the third element—causation.

Plaintiff's argument is that he was denied requested legal materials by Defendant Labarge because Plaintiff sued Mr. Oakes, the alleged boyfriend of Defendant Julia Gregg, Defendant Labarge's supervisor [Doc. 1 at 8, 9]. He maintains the connection between his protected conduct and the adverse action is evidenced by the fact that he has been denied legal services or otherwise "impeded" since Mr. Oakes was served with process in Case No. 3:26-cv-38 on May 5, 2026 [*Id.* at 9]. But the Court of Appeals for the Sixth Circuit has noted its reluctance to find that the temporal proximity between the protected conduct and the adverse action, without more, demonstrates that the protected conduct "was a substantial or motivating factor." *Smith v.*

*Campbell*, 250 F.3d 1032, 1038 (6th Cir.2001). And though "extremely close temporal proximity could permit an inference of retaliatory motive . . . often evidence in addition to temporal proximity is required to permit the inference." *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 401 (6th Cir. 2010).

The temporal proximity in this case is not particularly strong. Plaintiff maintains that he began having difficulty receiving his requested legal materials more than a month after Mr. Oakes was served in another of Plaintiff's cases. But even so, Plaintiff alleges that Defendant Labarge, not Defendant Gregg, denied him legal materials. He has not alleged any facts that would permit the inference that Defendant Gregg told Defendant Labarge to limit or restrict Plaintiff's access to legal materials, or that such instruction, even if given, was because Plaintiff had filed a lawsuit against Mr. Oakes. And while "retaliation rarely can be supported with direct evidence of intent, . . . . conclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state . . . a claim under § 1983." *Harbin–Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (cleaned up). Here, Plaintiff's allegations of retaliatory motive are impermissibly conclusory, and this claim will be **DISMISSED**.

### 2. Conspiracy

Plaintiff's complaint also alleges that Defendants conspired "on a course of action to deprive [him] and or interfere with [him] exercising [his] constitutional rights" [Doc. 1 at 10].

A civil conspiracy is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (citation omitted). In order to state a conspiracy claim, Plaintiff must show the existence of a single plan, that the co-conspirators shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action was committed in furtherance of the conspiracy that injured the plaintiff.

*Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). The conspiracy must be pleaded with particularity—vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (noting that allegations must be supported with factual allegations that render the claim "plausible," not merely "possible"). These standards are "relatively strict," *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008), and, impliedly, difficult to satisfy.

Plaintiff does not support his allegation of conspiracy with any relevant facts. Thus, Plaintiff has not alleged any facts from which a plausible inference may be made that these Defendants made an agreement to violate Plaintiff's rights, and his conspiracy claim will be **DISMISSED**. *See Twombly*, 550 U.S. at 557.

**3. Access to Courts**

This leaves Plaintiff's claim that Defendants interfered with his right to access the courts [Doc. 1 at 8–11]. As stated above, Plaintiff alleges that (1) Defendant Labarge improperly told Plaintiff to file a habeas action to challenge his prison disciplinary proceedings, which delayed him filing his § 1983 actions and resulted in several of his claims being dismissed as untimely; and (2) he was denied access to legal materials beginning June 10, 2026, after he filed a § 1983 action [*Id.*].

The right of access to the courts is a fundamental right protected by the Constitution. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). But the right is one of access, not an "abstract, freestanding right" to any particular legal materials. *Id.* at 351. And "a prisoner's constitutionally-guaranteed right of access to the courts has been protected when a state provides that prisoner with either the legal tools necessary to defend himself, e.g., a state-provided law library, or the assistance of legally-trained personnel." *Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir.1983).

Plaintiff has attached grievance records and legal library forms as exhibits to his complaint [Doc. 1-1 at 1–23]. And these exhibit records, which form part of the complaint, trump the allegations in the complaint insofar as there is any inconsistency between them. *See Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) ("documents attached to the pleadings become part of the pleadings" (citing Fed. R. Civ. P. 10(c)); *Brown v. Louisville-Jefferson Cnty. Metro Gov't*, 135 F.4th 1022, 1030 (6th Cir. 2025).

The exhibits reflect that, on June 3, 2026, Plaintiff submitted a legal library request for envelopes and "the entire 'Prisoners Rights' printed from West[]law" but was denied his request on June 10 due to his indigency [Doc. 1-1 at 1–2]. The response to that grievance indicated that Plaintiff was provided envelopes, but his request for TDOC policies was not a legal request and was thus denied [*Id.* at 3]. Plaintiff had a grievance hearing on the matter, where he stated that he "use[s] all 59 minutes of [his] Westlaw access every single day" and requested the Prisoners Rights chapter printed [*Id.* at 4].

Thereafter, Plaintiff submitted a legal library form dated June 17, 2026, requesting "[e]ntire Prisoners [R]ights from Westlaw § 10:47" [*Id.* at 12]. The law library only sent Plaintiff five pages, along with the explanation that the requested materials were "over 500 pages[;] will not print" [*Id.*].

A legal library form dated June 30, 2026, requesting various legal materials was fulfilled in part and denied in part [*Id.* at 7]. The requests for printed legal materials were denied because the documents were 107 and 70 pages respectively, and the law library asked Plaintiff to specify the portions needed [*Id.*].

On July 1, the Grievance Committee determined that Plaintiff "should be granted access to legal resources parallel with his security level" [*Id.*]. The Warden concurred with the proposal [*Id.* at 5].

On July 26, 2026, Plaintiff requested a § 1983 complaint, a federal *in forma pauperis* application, and a petition for administrative review in federal court [*Id.* at 9]. Those requests were fulfilled [*Id.*].

Also on July 26, 2026, Plaintiff requested envelopes [*Id.* at 10]. The prison regulations state that #10 white envelopes marked as Legal Mail are provided by the library, but that "9 x 12 manilla envelopes are available on commissary" [*Id.*]. A handwritten note affixed to the form states that the library would honor Plaintiff's request (presumably for 9 x 12 envelopes) "but will take [the money] off [Plaintiff's] inmate account as it comes available" [*Id.*].

On August 3, 2026, Plaintiff's requests for "Prisoners Rights" from Westlaw and a federal *in forma pauperis* application were fulfilled in part, with the law library sending him sixteen pages of documents and requesting that he "be specific" as to his request from Prisoners Rights, as it spanned hundreds of pages [*Id.* at 6].

These exhibits demonstrate that Plaintiff has not been denied access to the courts. Detention facilities may "reasonably limit the times, places, and manner in which inmates may engage in legal research and preparation of leg[al] papers so long as the regulations do not frustrate access to the courts." *Walker v. Mintzes*, 771 F.2d 920, 931–32 (6th Cir. 1985) ("Prison regulations [may] reasonably limit the times, places, and manner in which inmates may engage in legal research and preparation of leg[al] papers so long as the regulations do not frustrate access to the courts."). Plaintiff concedes that he receives one hour of Westlaw access daily. And, to the extent that his access claim rests upon the fact that he was denied voluminous printed copies of the

research he conducted on Westlaw, it is a nonstarter, as "the right of access does not include a per se right to photocopies in whatever amount a prisoner requests." *Courtemanche v. Gregels*, 79 F. App'x 115, 117 (6th Cir. 2003) (citations omitted).

Moreover, a plausible access-to-courts claim requires a prisoner to allege actual prejudice to a non-frivolous litigation that challenges either his sentence or the conditions of his confinement. *Lewis v. Casey*, 518 U.S. 343, 351, 355 (1996). That is, there must be an actual injury, and no actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Id.* at 356; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (stating that an inmate must show, "for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim").

Plaintiff seems to acknowledge the "actual injury" requirement, as his complaint alleges that because the library staff improperly told him to file a habeas action to challenge his disciplinary proceedings, that action was "ultim[a]t[e]ly dismissed because it was not the proper vehicle to challenge the disciplinary hearings" [*Id.* at 8]. And because he waited on that habeas ruling, he maintains, many of his § 1983 claims in Case No. 3:26-cv-38 were dismissed as untimely [*Id.* at 9]. However, the Court takes judicial notice that Plaintiff's habeas lawsuit he references in his complaint, *Page v. Phillips*, No. 3:25-cv-884 (M.D. Tenn. June 8, 2026), was not dismissed because the claims were improperly brought via the wrong vehicle, but for want of exhaustion. *See id.* at Doc. 11; *see also Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 n.6 (E.D. Tenn. 2019) ("Information taken from government websites is self-authenticating under Fed. R. Evid. 902, and courts may accordingly take judicial notice of the information found on these websites." (citations omitted)).

Further, incorrect legal advice is not a constitutional injury in an access-to-courts claim. The interference and resulting loss of a meritorious legal claim are what matter. Plaintiff has not plausibly alleged that his unexhausted habeas action challenging his disciplinary proceedings caused him actual injury in his habeas action or in his § 1983 action. This is especially true because inmates have no federally protected right to be free from disciplinary convictions, even false ones. *Wolff v. McDonnell*, 418 U.S. 539, 564–71 (1974); *Person v. Campbell*, No. 98–5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under § 1983."). And while Plaintiff alleges that his inability to overturn the disciplinary convictions led to a denial of parole, it is also well established that there is no right to parole, either constitutionally, *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987), or through Tennessee law, Tenn. Code Ann. § 40-28-117(a) (defining parole as "a privilege and not a right" and holding that if parole board determines that parole is appropriate "the prisoner may be paroled").

Moreover, while it appears that Plaintiff may have other claims he believes were affected, he fails to explain those underlying causes of action in a manner that plausibly alleges they had merit. *See Christopher v. Harbury*, 536 U.S. 403, 415–16 (2002) ("[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."). Accordingly, he has failed to set forth a colorable access-to-courts claim, and this claim will be **DISMISSED**.

## III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's first motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. Even with liberal construction, Plaintiff has failed to state a claim upon which relief may be granted under § 1983, and this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

5. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED**. **AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**/s/**
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**